UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| D.E. & B.E., Individually and on behalf of their son, D.E., <br><br>    Plaintiffs, <br><br>v. <br><br>**NORTH HUNTERDON-VOORHEES REGIONAL HIGH SCHOOL DISTRICT,** <br><br>    Defendant. | Civil Action No.: 04-5280 (MLC) |
| **NORTH HUNTERDON-VOORHEES REGIONAL HIGH SCHOOL DISTRICT,** <br><br>    Third-Party Plaintiff, <br><br>v. <br><br>**BROWN & BROWN INSURANCE,** <br><br>    Third-Party Defendant. | Civil Action No.: 04-5280 (JJH) <br><br><br>**OPINION AND JUDGMENT** |

**APPEARANCES:**

Lance J. Kalik, Esq.
Sara J. Simberg, Esq.
Riker, Danzig, Scherer, Hyland & Perretti LLP
Attorneys for North Hunterdon-Voorhees
    Regional High School District

David D. Blake, Esq.
Golden, Rothschild, Spagnola, Lundell,
    Levitt & Boylan, P.C.
Attorney for Brown & Brown Insurance

**HUGHES, U.S.M.J.**

    This matter involves a Third-Party Complaint filed by North Hunterdon-Voorhees Regional High School District ("District") against Third-Party Defendant Brown & Brown

1

Insurance ("B&B").  The parties agree that the Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367.  Plaintiffs D.E. and B.E. ("Plaintiffs") were the prevailing parties in a dispute brought against the District in October 2002 pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq*.  Subsequently, Plaintiffs filed a Complaint against the District in October 2004 seeking attorneys' fees and costs.  In April 2005, the matter between Plaintiffs and the District was settled between the parties and dismissed with prejudice by the Court.

As a result of Plaintiffs' Complaint against the District, the District filed a Third-Party Complaint against B&B in November 2004 alleging that B&B was the District's insurance broker and negligently failed to place the appropriate insurance carrier on notice of Plaintiffs' claim against the District.  The Errors and Omissions Liability policy in effect between July 1, 2002 and July 1, 2003 was issued to the District by New Jersey School Boards Association Insurance Group ("NJSBAIG") and brokered by Randall May.  NJSBAIG denied coverage for Plaintiffs' claim against the District because the claim was not reported within the policy period.  A previous Errors and Omissions policy, issued by Selective Insurance Company ("Selective"), was brokered by B&B for the District for the period between July 1, 2001 and July 1, 2002.  As an alternative theory of negligence, the District asserts that B&B failed to put Selective on notice of Plaintiffs' claim against the District and that this failure prevented the District from appropriately seeking coverage under the NJSBAIG policy.

Generally, Defendant B&B contends that it was not the District's broker for the NJSBAIG policy and that it had no duty to put NJSBAIG on notice of the District's claim.  Further, B&B denies it was negligent in failing to put Selective on notice of Plaintiffs' claim against the District.  B&B asserts that the negligence of the District and its counsel are the

proximate cause of NJSBAIG's denial of coverage, not any action that B&B did or did not take.

Although the District asserts both breach of contract and negligence in its Complaint against B&B, the only claim included in the Final Pretrial Order and addressed at trial was negligence. The parties consented to the jurisdiction of the United States Magistrate Judge, and the case was tried to the Court in a bench trial held on June 12, 13 and 14, 2007. At the conclusion of the trial, the Court took the matter under advisement.[1]

## I.  EVIDENCE

At trial, the Court heard testimony from the following witnesses offered by the District:

1.   Susan Vega, a customer service representative ("CSR") of B&B. She testified as to B&B's purchase of the Turner Group. She further testified that when a CSR receives notice of a claim from an insured, he reports the claim to the appropriate insurance carrier. Ms. Vega had no recollection of receiving a letter from Kevin O'Connor, Esquire, Counsel for the District, regarding the claim at issue in this case.

2.    Dina Tristani, Director of Quality Control for B&B. Ms. Tristani testified as to B&B's policies and procedures for handling notices of claims received from insureds.

3.   Randall May, an employee of the Turner Group until the Turner Group sold its assets to B&B in April 2002. Following the sale of Turner's assets to B&B, Mr. May became a broker employed by Highview Planning. Mr. May testified that he had been the broker for the

---

[1] The parties made various Motions *in limine*. The District's Motion seeking to preclude the testimony of Mr. Klagholz and the testimony of the Plaintiff parents was withdrawn in part and dismissed as moot in part by separate Order dated June 18, 2007. (See Dkt. no. 04-5280, entry no. 62, 69).
  B&B's Motion, included in its trial brief, sought to preclude the personnel file of Charles Ortiz and the October 15, 2004 letter from the NJSBAIG, and compel Kevin O'Connor, Esquire, to testify without protection of the attorney-client privilege. These motions were ruled upon by the Court on the record during trial.

District's Errors and Omissions ("E&O") policy at the time that Turner was assumed by B&B. Mr. May further testified that while he was working for Highview Planning he became the District's broker for the E&O policy through NJSBAIG on July 1, 2002. Mr. May stated, during his testimony, that no one put him on notice regarding Plaintiffs' claim against the District, and therefore, he did not give notice to any insurance carrier regarding this claim.

     4.     <u>Jeffrey Perlman</u>, the District's expert witness. The Court permitted Mr. Perlman to offer opinion in the field of insurance management, specifically claims handling. Mr. Perlman testified as to administrative actions, the prevailing party's claim for fees, and the District's action in this case. Mr. Perlman also discussed the different costs and fees covered by the District's NJSBAIG policy. These costs and fees included: (1) the defense costs incurred by the District in defending the underlying administrative action; (2) the attorneys' fees awarded to the parents if they were a "prevailing party" pursuant to the IDEA; and (3) the attorneys' fees incurred by the District in defending a claim for attorneys' fees under the IDEA.

Mr. Perlman further testified as to the standard for brokers in handling claims. He stated that if a broker received notice of a claim from an insured regarding an expired policy, the broker had an obligation to put the carrier on notice of that claim. Mr. Perlman explained that the broker for a certain insurance policy has no discretion in deciding whether to put the carrier on notice regardless of whether that policy has expired.

In contrast, Mr. Perlman stated that a broker has no obligation to inform an insured that there may be another policy with a different broker under which a claim may be filed. Instead, Mr. Perlman said that although under those circumstances a broker should inform the insured that he is not the correct broker, if the broker does so inform the insured, it is mere courtesy on the broker's part, not a legal obligation. On cross examination, Mr. Perlman explained that a

broker or agent can only pass on to the carrier the information received by him from the insured. It is the insured's responsibility to inform his broker of claims filed against him.

     5.     <u>Kevin O'Connor</u>, Esquire, Counsel for the District during the relevant NJSBAIG policy period. Mr. O'Connor testified that he represented the District in the Due Process Petition, that he was not an insurance attorney, and that he was asked to look into the District's insurance coverage in relation to the Due Process Petition. Mr. O'Connor explained that he was given an expired Selective policy and following an internet search, he discovered that B&B assumed the Turner Group. Mr. O'Connor testified that he contacted B&B by telephone in November 2002. However, he does not recall with whom he spoke and has no written confirmation or memorialization of this call.

     Mr. O'Connor further testified that he called Susan Vega on April 30, 2003 and followed up this conversation with a letter faxed to B&B. He stated that he called Charles Ortiz on June 23, 2003 and followed up this conversation with a letter faxed to B&B. Although Mr. O'Connor recalls discussing the NJSBAIG policy with Mr. Ortiz, he acknowledges that only the expired Selective policy, not the NJSBAIG policy, is referenced in these two letters. Mr. O'Connor testified that he was never advised that Randall May was the District's broker or that NJSBAIG was the carrier on the District's most recent E&O policy. Therefore, Mr. O'Connor stated that he never contacted Randall May regarding the District's claim.

     6.     <u>Mary Stawicki</u>, a supervisor at B&B's Parsippany office in Fall 2002. Ms. Stawicki generally testified as to certain policies on claims handling at B&B.

     The Defense offered the following two witnesses:

     1.     <u>John Klagholz</u>, B&B's expert witness. The parties stipulated as to Mr. Klagholz's qualifications to testify in the field of insurance industry standards and practices. Mr. Klagholz

testified that the relevant standard of care for B&B was reasonable skill, care and diligence. Mr. Klagholz further testified that B&B did not deviate from the standard of care in failing to advise Mr. O'Connor of Randall May's position as the District's broker or of the NJSBAIG policy for which B&B was not the broker. Mr. Klagholz stated that B&B had no obligation or opportunity to interfere with Randall May or the NJSBAIG policy because this policy did not appear in B&B's computer system. Mr. Klagholz did acknowledge that, because B&B was the District's broker for the Selective policy, it would have been negligent for B&B not to put Selective on notice of the District's claim even though the Selective policy had expired.

   2. <u>Charles Ortiz</u>, a technical assistant at B&B's Parsippany office in 2003. Mr. Ortiz described handling incoming phone calls and the process of documenting the calls on B&B's computer system. Mr. Ortiz did not recollect a telephone conversation with Mr. O'Connor or Mr. Albert or certain computer entries referencing a call and facsimile from Mr. O'Connor. Based on the computer entry, Mr. Ortiz testified that he advised Mr. O'Connor that the Selective policy had expired and that Mr. O'Connor was supposed to get back to Mr. Ortiz if the claim was to be pursued with Selective. Mr. Ortiz acknowledged that there was no reason not to send Mr. O'Connor's letter to Selective. Mr. Ortiz further acknowledged that he had no way of knowing of any E&O policy the District had with NJSBAIG.

  Both parties offered into evidence the transcript of Mark Albert's deposition testimony. Mr. Albert was unavailable to testify at trial.

   1. <u>Mark Albert</u>, Business Administrator for the District from July 1, 2001 through June 30, 2006. In his deposition testimony, Mr. Albert described the parents' claim against the District, the prevailing party's rights to fees and costs, and the District's insurance coverage. According to Mr. Albert's testimony, he was generally confused about the steps needed to be

taken to ascertain the District's insurance coverage. Mr. Albert directed Mr. O'Connor to find the carrier and put that carrier on notice of the District's claim. Mr. Albert did not advise Mr. O'Connor about the NJSBAIG policy, but he did testify that he advised Randall May of Plaintiffs' claim against the District. Mr. Albert testified that he recommended that the School Board name Randall May as its broker and secure the NJSBAIG policy, effective July 1, 2002. Mr. Albert recalls participating in a telephone call with Mr. O'Connor and Mr. Ortiz regarding the claim.

The Court has also considered Exhibits that were admitted into evidence during the course of the trial. The District offered P-2 which included phone records for Mary Ellen Henzler, Mr. O'Connor's secretary, dated April 30, 2003. B&B offered no independent exhibits. However, the parties entered the following joint exhibits:

    J-4: Board Meeting Minutes dated 04/30/02.

    J-5: Contract between B&B and NJSBAIG dated 06/18/02.

    J-6: Letter from Mark Albert to JoAnne Gianopulos, employee with B&B, dated 06/28/02.

    J-7: Letter from Jay Mason of B&B to Mark Albert dated 07/23/02.

    J-8: Petition for Due Process dated 10/21/02.

    J-9: NJSBAIG Errors & Omissions Policy issued to the District, including Declarations Page, dated 07/01/02 - 07/01/03.

    J-10: Umbrella Liability Declarations Page dated 07/01/02 - 07/01/03.

    J-11: Workers' Compensation and Employers' Liability Agreement Declarations Page dated 07/01/02 - 07/01/03.

    J-12: Package Policy Declarations dated 07/01/02 - 07/01/03.

    J-13: Phone records for Kevin O'Connor dated 04/29/03.

J-15:   Letter to Susan Vega, B&B employee, from Kevin O'Connor, Esq., then counsel for the District (with fax cover sheet) dated 04/30/03.

J-16:   Phone records for Kevin O'Connor dated 06/23/04.

J-17:   Letter to Charles Ortiz, B&B employee, from Kevin O'Connor (with fax cover sheet) dated 06/23/03.

J-18:   Phone records for Kevin O'Connor dated 06/24/03.

J-19:   B&B Customer Note Listing print out dated 07/02/03.

J-24:   Letter from Selective Insurance to Mark Albert dated 06/14/04.

J-25:   Letter from Selective Insurance to Mark Albert dated 07/14/04.

J-26:   Unexecuted letter to Randy May from Mark Albert dated 07/23/04.

J-27:   Unexecuted letter to Randy May from Mark Albert dated 07/28/04.

J-28:   Letter to Mark Albert, former Business Administrator/Board Secretary for the District, from David McCabe, Claims Examiner for NJSBAIG, dated 10/15/04.

J-30:   Third-Party Plaintiff's Initial Interrogatories on Third-Party Defendant dated 02/23/05.

J-37:   Third-Party Plaintiff's Request for Admissions dated 07/07/05.

J-38:   Third-Party Defendant's Responses to the District's Request for Admissions.

J-39:   Third-Party Defendant's Answers to Interrogatories dated 08/22/05.

## II.   STIPULATED FACTS

1.   The NJSBAIG issued a School Leaders Errors and Omissions Policy to the District for the July 1, 2002 to July 1, 2003 ("NJSBAIG E&O Policy") policy year. The NJSBAIG E&O Policy applied if a claim was made against the insured and reported to NJSBAIG during the policy period, i.e., between July 1, 2002 and July 1, 2003. (Final Pretrial Order at 4).

    2.    On April 30, 2003, Kevin O'Connor, counsel for the Board, successfully faxed a letter to Susan Vega, B&B employee. Mr. O'Connor also successfully faxed a letter to Mr. Charles Ortiz, B&B employee, on June 23, 2003. B&B received both the April 30, and June 23, 2003 notices of claim that O'Connor sent to B&B during the July 1, 2002 to July 1, 2003 policy period. (Final Pretrial Order at 5).

    3.    The parties stipulated to the amount of damages at issue:

| | |
|---|---|
| $ 62,095.00 | Amount defending administrative action |
| $100,000.00 | Amount of parents attorneys' fees claim (amount was $115,000 but insurance policy capped at $100,000) |
| $ 23,178.00 | Amount defending attorneys' fees claim |
| $185,273.00 | Sub-total |
| -$ 5,000.00 | Minus the District's insurance deductible |
| **$180,273.00** | Total amount at issue |

## III. FINDINGS OF FACT BY THE COURT

### A. GENERAL

    1.    On October 21, 2002, the parents of D.E. (Plaintiffs in this case) filed a special education Due Process Petition against the District. (Dist.'s Trial Br. at 4).

    2.    The NJSBAIG issued a School Leaders Errors and Omissions Policy to the District for the July 1, 2002 to July 1, 2003 policy period. Id. at 3.

    3.    The NJSBAIG policy provided coverage to the District for special education administrative actions, in that the NJSBAIG would pay for (1) defense costs incurred by the District in defending the underlying administrative action; (2) attorneys' fees awarded to the parents if they were a "prevailing party" pursuant to the IDEA; and (3) attorneys' fees incurred by the District in defending a claim for attorneys' fees under the IDEA. Id.

    4.    The NJSBAIG E&O policy applied if the claim was made against the insured, and

reported to NJSBAIG, during the same policy period, i.e., between July 1, 2002 and July 1, 2003. <u>Id.</u>

      5.      The NJSBAIG policy was secured by Randall May, the District's broker. (B&B's Trial Br. at 3).

      6.      Prior to the NJSBAIG policy, the District held an E&O policy through Selective Insurance Company. <u>Id.</u> at 2.

      7.      The District's Selective policy, secured by broker B&B, expired on June 30, 2002. <u>Id.</u>

**B.**      NEGLIGENCE OF **B&B**

**Selective Insurance**

      8.      Mr. O'Connor contacted Susan Vega in April 2003 regarding Plaintiffs' claim against the District and followed up the phone conversation with a letter faxed to B&B. (Dist.'s Trial Br. at 6).

      9.      The letter sent by Mr. O'Connor following his conversation with Ms. Vega references only the expired Selective Policy, not the NJSBAIG policy. (<u>See</u> O'Connor Test.).

      10.      Susan Vega did not notify Selective of Plaintiffs' claim against the District. (Dist.'s Trial Br. at 8).

      11.      Mr. O'Connor contacted Charles Ortiz in June 2003 regarding Plaintiffs' claim against the District and followed up the phone conversation with a letter faxed to B&B. <u>Id.</u> at 7.

      12.      Mr. Ortiz did not notify Selective of Plaintiffs' claim against the District. <u>Id.</u>

      13.      Selective acknowledges that it never received notice of Plaintiffs' claim against the District from B&B or anyone else. (<u>See</u> Ex. J-25).

**NJSBAIG**

14.     Mr. O'Connor did not reference the NJSBAIG policy in any letter he sent to B&B regarding Plaintiffs' claim against the District.  (See O'Connor Test.).

15.     Mr. O'Connor did not contact Randall May, broker for the NJSBAIG policy, during the policy period between 2002 and 2003.  Id.

16.     B&B had no way of knowing that Randall May was the District's broker for an E&O policy in 2002-2003 or that NJSBAIG was the District's carrier.  (See Klagholz and Stawicki Test.).

17.     Although the face of the NJSBAIG policy states "Serviced by Brown & Brown," this would not alert B&B to the existence of the NJSBAIG policy.  (See Klagholz Test.).

18.     "Serviced by Brown & Brown," a phrase located on the face of the NJSBAIG policy, meant that B&B provided general advice to NJSBAIG as to different insurance policies available that NJSBAIG would then issue.

19.     The NJSBAIG policy would not have been in B&B's computer system because it was not brokered by B&B.  (See Tristani Test.).

20.     B&B was not the District's broker for the NJSBAIG policy.  (Dist.'s Trial Br. at 10).

21.     B&B did not contact NJSBAIG regarding Plaintiffs' claim against the District.  Id. at 8.

## IV.    CONCLUSIONS OF LAW

### A.    NEGLIGENCE REGARDING NJSBAIG POLICY

1.     In the present matter, the preponderance of the evidence standard requires Plaintiff to provide evidence showing that it is more likely than not that Defendant was negligent.  See

Penn v. Wal-Mart Stores, Inc., 116 F. Supp. 2d 557, 564 (D.N.J. 2000).

2. To prevail in a negligence action under New Jersey law, a plaintiff must establish:

   a. that the defendant owed him a particular duty under the circumstances that gave rise to this action;
   b. that the defendant somehow breached that duty; and
   c. that the defendant's breach of duty proximately caused him to suffer some damage or harm.

Keith v. Truck Stops Corp. of America, 909 F.2d 743, 745 (3d Cir. 1990); Griesenbeck v. Walker, 199 N.J. Super. 132, 141 (App. Div.), cert. denied, 101 N.J. 264 (1985).

3. A plaintiff has the burden of proving by a preponderance of the credible evidence that negligence on the part of a defendant proximately caused injury before recovery from that defendant will be allowed. Buckelew v. Grossbard, 87 N.J. 512, 525 (1981).

4. To prevail in a negligence action under New Jersey law, a plaintiff also must establish by a preponderance of the competent, material evidence that the defendant's conduct caused the injuries and losses for which it seeks recovery. Causation includes both cause in fact and legal causation, often referred to as "proximate cause." Fedorczyk, 82 F.3d at 73; Kulas v. Public Serv. Elec. and Gas Co., 41 N.J. 311, 317 (1964).

5. Causation in fact depends on whether a defendant's act or omission played a material part in bringing about the injury-producing event in question, and "[a]n act or omission is not regarded as a cause in fact of an event if the particular event would have occurred without it." Fedorczyk, 82 F.3d at 73; see also New Jersey Dep't of Envtl. Protection v. Jersey Central Power & Light Co., 69 N.J. 102, 110 (1976), and Kulas, 41 N.J. at 317.

6. B&B met the relevant standard of care for brokers by acting with skill, diligence and care regarding Plaintiffs' claim against the District under the NJSBAIG policy. (See Perlman and Klagholz Test.).

7. B&B had no obligation to inquire into the District's NJSBAIG policy which was secured by a different broker, Randall May. (See Klagholz Test.).

8. The Court finds no negligence on the part of B&B in failing to put NJSBAIG on notice of Plaintiffs' claim against the District.

**B. NEGLIGENCE REGARDING SELECTIVE POLICY**

9. The Court finds that the failure of B&B to notify Selective of Plaintiffs' claim against the District, even if the Selective policy had expired, is a deviation from the relevant standard of care. (See Klagholz Test.).

10. If a broker is found liable for failing to exercise the requisite skill, care and diligence "and if such care is the direct cause of loss to his customer, then he is liable for such loss." Industrial Valley Band and Trust Co. v. Dilks Agency, 751 F.2d 637, 640 (3d Cir. 1985).

11. The failure of B&B to notify Selective of Plaintiffs' claim against the District claim was neither the direct nor proximate cause of the District's loss, and therefore, B&B is not liable for that loss.

12. The proximate cause of the District's loss was its failure, through Mr. Albert or another responsible employee to advise Randall May, its broker, and Mr. O'Connor, its attorney, of the NJSBAIG policy, and its subsequent failure to notify NJSBAIG of the claim.

**V. CONCLUSION**

In view of the foregoing, the Court finds that the District has not proven, by a preponderance of the evidence, that B&B was negligent in failing to notify NJSBAIG of the District's claim. The Court further finds that although the District has proven, by a preponderance of the evidence, that B&B was negligent in failing to notify Selective of Plaintiffs' claim against the District, this failure was not the proximate cause of the District's

13

loss. The Court finds that the proximate cause of the District's loss was its own failure to notify either its broker, Randall May, or NJSBAIG of the claim. Finally, any discrepancies between the testimony of Mr. O'Connor, Mr. Ortiz, Mr. Albert, and Mr. May as to the events in question are attributable, in the Court's view, to honest mis-recollection and the passage of time and are not dispositive of any material issue in the case.

## VI. VERDICT

IT IS on this 20th day of June, 2007,

ORDERED that there is NO CAUSE OF ACTION FOR THIRD-PARTY PLAINTIFF THE DISTRICT and therefore, JUDGMENT IS ENTERED IN FAVOR OF THIRD-PARTY DEFENDANT B&B; and it is

FURTHER ORDERED that no costs be awarded.

       /s/ *John J. Hughes*  
      **JOHN J. HUGHES**  
      **UNITED STATES MAGISTRATE JUDGE**